UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-60178-CV-MIDDLEBROOKS/BRANNON

DONALD BLAIR, *et al.*,

     *Plaintiffs,*

 vs.

BED BATH & BEYOND, INC.,

     *Defendant.*

**DEFENDANT BED BATH & BEYOND, INC.'S MOTION TO
DISMISS OR TRANSFER THE COMPLAINT, OR STAY THIS ACTION
AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ........................................................................................................................ 3

ARGUMENT .............................................................................................................................. 5

I.     THIS CASE SHOULD BE DISMISSED BECAUSE THE COURT CANNOT EXERCISE PERSONAL JURISDICTION OVER THE DEFENDANT. ................... 5

II.    THIS CASE SHOULD BE DISMISSED BECAUSE VENUE IS NOT PROPER. ................................................................................................................ 6

III.   THE CASE SHOULD BE TRANSFERRED TO THE SDNY. ..................................... 8

        A.    This Action Could Have Been Brought in the SDNY. ............................................ 8

        B.    Transfer to the SDNY Would Serve the Interests of Justice and the Convenience of Parties and Witnesses. ................................................................ 9

IV.   IF THIS ACTION IS NOT TRANSFERRED, IT SHOULD BE STAYED. ............... 13

CONCLUSION ........................................................................................................................ 14

LOCAL RULE 7.1(a)(3) CERTIFICATION ........................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Ground Info. Sys., Inc. v. Life360, Inc.*,
   No. 14-80651-cv-Middlebrooks, 2014 WL 12469974 (S.D. Fla. Sept. 16,
   2014) ..........................................................................................................................9, 10

*AL & PO Corp. v. Am. Healthcare Capital, Inc.*,
   No. 14 C 1905, 2015 WL 738694 (N.D. Ill. Feb. 19, 2015).......................................................7

*Blue Gentian, LLC v. Tristar Prod., Inc.*,
   No. 12-81170-cv-Seitz, 2013 WL 12097761 (S.D. Fla. Mar. 19, 2013) ..................................12

*Brown v. Conn. Gen. Life Ins. Co.*,
   934 F.2d 1193 (11th Cir. 1991) ................................................................................................13

*Brownsberger v. Gexa Energy, LP*,
   No. 10-81021-cv-Hurley, 2011 WL 197464 (S.D. Fla. Jan. 20, 2011), *aff'd
   sub nom. Brownsberger v. Nextera Energy, Inc.*, 436 F. App'x 953 (11th Cir.
   2011) ......................................................................................................................................6, 8

*Carucel Investments, L.P. v. Novatel Wireless, Inc.*,
   157 F. Supp. 3d 1219, 1223 (S.D. Fla. 2016) ..................................................................8, 9, 12

*Clinton v. Jones*,
   520 U.S. 681 (1997)..................................................................................................................13

*Credit Card Fraud Control Corp. v. Cybersource Corp.*,
   No. 12-81141-cv-Middlebrooks, 2013 WL 12094633 (S.D. Fla. Jan. 31, 2013) ....................11

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014).............................................................................................................5, 9

*Ferens v. John Deere Co.*,
   494 U.S. 516 (1990)..................................................................................................................12

*Flynn v. Hovensa, LLC*,
   No. CIV.A. 3:14-43, 2014 WL 3375238 (W.D. Pa. July 3, 2014) ...........................................5

*Foster v. Nationwide Mut. Ins. Co.*,
   No. C 07-04928 SI, 2007 WL 4410408 (N.D. Cal. Dec. 14, 2007) ........................................11

*Gray v. Apple Inc.*,
   No. 13-cv-7798 (KM), 2016 WL 4149977 (D.N.J. Aug. 3, 2016)............................................5

*Henrichs v. Nova Biomed. Corp.*,
   No. 6:14-CV-2, 2014 WL 2611825 (S.D. Tex. June 11, 2014)..................................................8

*Ingram v. Family Dollar Stores of Ala., Inc.*,
   No. CV-06-BE-1507-S, 2006 WL 7132701 (N.D. Ala. Sept. 29, 2006)................................12

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
   326 U.S. 310 (1945)..................................................................................................................6

*Jenkins Brick Co. v. Bremer*,
   321 F.3d 1366 (11th Cir. 2003) ................................................................................................7

*Joseph v. Liberty Nat. Life Ins. Co.*,
   No. 08-20117-cv-Martinez, 2008 WL 2026006 (S.D. Fla. May 9, 2008) ................................7

*Koster v. Lumbermens Mutual Cas. Co.*,
   330 U.S. 518 (1947)................................................................................................................12

*Lopez v. Miami-Dade Cnty.*,
   145 F. Supp. 3d 1206, 1208 (S.D. Fla. 2015) ........................................................................13

*Louis Vuitton Malletier, S.A. v. Mosseri*,
   736 F.3d 1339 (11th Cir. 2013) ................................................................................................6

*M Tobacos, Inc. v. Case*,
   No. 14-81481-cv-Middlebrooks, 2015 WL 11438107 (S.D. Fla. Apr. 17,
   2015) ........................................................................................................................................8

*Matthews v. Brookstone Stores, Inc.*,
   469 F. Supp. 2d 1056 (S.D. Ala. 2007)....................................................................................6

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
   558 F.3d 1210 (11th Cir. 2009) ...........................................................................................5, 6

*Onyeneho v. Allstate Ins. Co.*,
   466 F. Supp. 2d 1 (D.D.C. 2006) ...........................................................................................11

*Osgood v. Disc. Auto Parts, LLC*,
   981 F. Supp. 2d 1259 (S.D. Fla. 2013) ....................................................................................8

*Rothschild Digital Media Innovations, LLC v. Sony Comput. Entm't Am. LLC*,
   No. 14-22134-cv-Middlebrooks, 2014 WL 12029271 (S.D. Fla. Aug. 28,
   2014) ......................................................................................................................................11

*United States ex rel. Sero v. Preiser*,
   506 F.2d 1115 (2d Cir. 1974)...................................................................................................7

*U.S. Commodities Futures Trading Comm'n v. Hunterwise Commodities, LLC*,
  No. 12-81311-cv-Middlebrooks, 2013 WL 12082737 (S.D. Fla. Feb. 12, 2013) .......................................................................................................................10

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014) ..............................................................................................6

*In re Warrick*,
  70 F.3d 736 (2d Cir. 1995) .....................................................................................12

*Zenith Elecs. LLC v. Craig Elecs. Inc.*,
  No. 13-80567-cv-Middlebrooks, 2014 WL 12452452 (S.D. Fla. Feb. 4, 2014) ........9

**Statutes**

28 U.S.C. § 1332(d)(2) ...........................................................................................................9

28 U.S.C. § 1391(b) ...............................................................................................................7

28 U.S.C. § 1391(c) ...............................................................................................................8

28 U.S.C. § 1404(a) ...........................................................................................................1, 8

28 U.S.C. § 1406(a) ...................................................................................................1, 3, 6, 8

**Rules**

Fed. R. Civ. P. 45 .................................................................................................................10

Fed. R. Civ. P. 12(b)(2) ..............................................................................................1, 3, 5, 6

Fed. R. Civ. P. 12(b)(3) .....................................................................................................1, 3

Defendant Bed Bath & Beyond ("BB&B") moves this Court for an order pursuant to Federal Rule of Civil Procedure 12(b)(2) and (3) and 28 U.S.C. § 1406(a) dismissing this case for lack of personal jurisdiction and/or improper venue or, in the alternative, transferring this case pursuant to 28 U.S.C. §§ 1404(a) or 1406(a) to the Southern District of New York ("SDNY"), where *In re Welspun Litigation*, No. 16 Civ. 6792 (RJS) (the "SDNY Action")—a consolidated class action involving the same allegations and a larger putative class—is already pending. Finally, if the Court declines to dismiss or transfer this action, Defendant BB&B respectfully requests that this Court exercise its inherent power to stay this case pending resolution of the SDNY Action.

## PRELIMINARY STATEMENT

This action is a blatant case of forum-shopping with no basis to proceed in this Court.

As relevant background, Plaintiffs' out-of-state counsel in this action, Hagens Berman Sobol Shapiro LLP ("Hagens") and Paynter Law Firm ("Paynter"), previously filed two actions in the SDNY that are based on the same conduct alleged here—Welspun's labeling of bed linens as "100% Egyptian Cotton"—and seek to represent a putative nationwide class of consumers that encompasses the entire putative class here and then some: whereas Plaintiffs' complaint here defines the putative class to include only those individuals who "purchased bed linens from [BB&B] which were manufactured by Welspun and labeled as '100% Egyptian Cotton,'" the SDNY complaint against Welspun defines the putative class much more broadly to include all individuals who purchased bed linens "manufactured or distributed by [Welspun] and labeled as '100% Egyptian Cotton,'" regardless of retailer.[1] (*See* Compl., *Abbott v. Welspun India Ltd., et al.*, No. 16 Civ. 6792 (RJS), Dkt. No. 1 (S.D.N.Y. Aug. 29, 2016) (the "*Abbott* action"; complaint attached as Ex. 1 (the "*Abbott* Compl.")); Compl., *Monahan v. Wal-Mart Stores, Inc.*, No. 16 Civ. 8662 (RJS), Dkt. No. 1 (S.D.N.Y. Nov. 8, 2016) (the "*Monahan* action"; complaint attached as Ex. 2 (the "*Monahan* Compl.")); *compare Blair* Compl. ¶ 47,[2] *with Abbott* Compl. ¶ 29.) Several other plaintiffs' counsel similarly filed suit, and in the face of a motion for multidistrict litigation assignment, they voluntarily agreed to consolidate their actions in the SDNY without a formal MDL order. (Joint Status Report at 4, *In re Welspun Litig.*, No. 16 Civ. 6792 (RJS), Dkt. No. 27

---

[1] "Welspun" hereinafter refers to Welspun India Ltd. and Welspun USA, Inc.
[2] References to "*Blair* Compl. ¶ __" are to the corresponding paragraphs of the complaint in this case (Dkt. No. 1).

1

(S.D.N.Y. Dec. 5, 2016), attached as Ex. 3 (the "*Welspun* Status Report").[3]) Following that agreement, Hagens and Paynter sought to be named interim lead counsel to plaintiffs in the consolidated SDNY Action. (Hagens Berman Interim Co-Lead Counsel Appl., *In re Welspun Litig.*, No. 16 Civ. 6792 (RJS), Dkt. No. 29 (S.D.N.Y. Dec. 9, 2016), attached as Ex. 4 (the "Hagens Lead Counsel Appl.").) While that motion was pending, Hagens and Paynter tried to hedge their bets: they filed this sister, copycat lawsuit on behalf of the instant Plaintiffs, even though their previously filed complaint undisputedly addresses these Plaintiffs' purchases. Having now been rejected as lead counsel in the consolidated action—because the SDNY court was concerned that their request would likely lead to "duplicated efforts" and "wasted resources"[4]—Hagens and Paynter seek to improperly litigate in this District.

In addition to the fact that this litigation is wasteful and duplicative in light of the SDNY Action, there is no nexus between this Court or District, on the one hand, and Plaintiffs' claims, on the other. The two named Plaintiffs reside in and allegedly purchased the products at issue in Arizona and North Carolina. (*Blair* Compl. ¶¶ 5–6, 36, 41.) Defendant BB&B does not reside in Florida; it is incorporated in New York and has its principal place of business in New Jersey. (*Blair* Compl. ¶ 7.) It is undisputed that the products at issue were not manufactured in Florida. Indeed, the entity that allegedly supplied BB&B with those products, Welspun India Ltd. ("WIL"), is a foreign company with its principal place of business in India. (*Blair* Compl. ¶ 2.) Its U.S. subsidiary Welspun USA, Inc. ("WUSA") is incorporated in Delaware with its principal place of business in New York City. To top it off, Plaintiffs' putative class action complaint alleges zero violations of Florida law, instead raising claims of federal and ***New Jersey*** law. (*Blair* Compl. ¶¶ 55–111.)

This Court should not countenance Plaintiffs' counsel's tactics. Instead, Plaintiffs' action should be dismissed on grounds of lack of personal jurisdiction or improper venue. Defendant BB&B is not subject to this Court's personal jurisdiction because it is not "at home" in Florida and there is no nexus between its alleged conduct and this District sufficient to satisfy traditional

---

[3] The four cases against Welspun were consolidated under the *Abbott* case number and, together, are being coordinated with the *Monahan* action for discovery and other pretrial scheduling. (Order on Consolidation at 3–4, *In re Welspun Litig.*, No. 16 Civ. 6792 (RJS), Dkt. No. 30 (S.D.N.Y. Dec. 12, 2016), attached as Ex. 5 (the "*Welspun* Consolidation Order").)

[4] (See Order Appointing Lead Counsel at 3, *In re Welspun Litig.*, No. 16 Civ. 6792 (RJS), Dkt. No. 58 (S.D.N.Y. Jan. 26, 2017), attached as Ex. 6 (the "*Welspun* Lead Counsel Order").)

notions of fair play and due process. Similarly, venue is not proper in this District because none of the alleged acts giving rise to Plaintiffs' claims occurred in this District, and BB&B, a New York corporation with its principal place of business in New Jersey, does not reside here as a matter of law. Thus, Plaintiffs' complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) and (3) and 28 U.S.C. § 1406(a).

Alternatively, in the interests of judicial economy and efficiency, this action should be transferred to the SDNY, where it can be consolidated or coordinated with the SDNY Action or, at the very least, it should be stayed pending resolution of the SDNY Action.

## BACKGROUND

This case is just another in a string of cases involving bed linens manufactured by Welspun labeled as "100% Egyptian Cotton" and distributed by well-known retailers like BB&B. (*See, e.g.*, Ex. 1, *Abbott* Compl.; Am. Compl., *Aasgaard, et al. v. Welspun USA, Inc., et al.*, No. 16 Civ. 1408 (RLW), Dkt. No. 7 (E.D. Mo. Sept. 2, 2016) (the "*Aasgaard*" action; complaint attached as Ex. 7 (the "*Aasgaard* Am. Compl.")); Am. Compl., *Brower, et al. v. Welspun India Ltd., et al.*, No. 16 Civ. 7318 (RJS), Dkt. No. 23 (S.D.N.Y. Oct. 31, 2016) (the "*Brower*" action; complaint attached as Ex. 8 (the "*Brower* Am. Compl.")); Compl., *Keep v. Welspun India Ltd., et al.*, No. 16 Civ. 9133 (RJS), Dkt. No. 1 (S.D.N.Y. Nov. 23, 2016) (the "*Keep*" action; complaint attached as Ex. 9 (the "*Keep* Compl.")); Ex. 2, *Monahan* Compl.)

Beginning in August 2016, some retailers of Welspun products announced a voluntary recall of certain Welspun Egyptian cotton bed linens based on their belief that these products were mislabeled. (Ex. 7, *Aasgaard* Am. Compl. ¶ 21; Ex. 1, *Abbott* Compl. ¶ 19; Ex. 8, *Brower* Am. Compl. ¶ 29; Ex. 9, *Keep* Compl. ¶ 18; Ex. 2, *Monahan* Compl. ¶ 19; *Blair* Compl. ¶¶ 3–4, 20.) Over the next few months, eight plaintiffs filed four putative class action suits challenging the labeling and sale of Welspun Egyptian cotton bed linens, regardless of who sold those products to the public. Welspun responded by moving for MDL transfer and consolidation. (Mot. to Transfer, *In re Welspun Egyptian Cotton Mktg. Litig.*, MDL No. 2758, Dkt. No. 1 (J.P.M.L. Oct. 25, 2016) ("MDL 2758"; motion attached as Ex. 10).) In opposition, several of the plaintiffs—including those represented by Hagens and Paynter—argued that formal transfer and consolidation was unnecessary since all but one of the pending actions were filed in the SDNY. (*Abbott* Opp'n, MDL 2758, Dkt. No. 15 (Dec. 16, 2016), attached as Ex. 11; *Brower*

Opp'n, MDL 2758, Dkt. No. 14 (Dec. 16, 2016), attached as Ex. 12; *Aasgaard* Opp'n, MDL 2758, Dkt. No. 13 (Dec. 16, 2016), attached as Ex. 13.)

Soon after Welspun's MDL motion was fully briefed, the parties conferred and agreed to voluntarily "consolidate" all pending actions against Welspun in the SDNY before Judge Richard J. Sullivan into the SDNY Action. (*See* Ex. 5, *Welspun* Consolidation Order at 2–3 (explaining that "all parties agree that the Cases should be consolidated into a single putative class action").) Hagens and Paynter also agreed to "coordinate" the only related action not naming Welspun as a defendant, the *Monahan* action—which Hagens and Paynter commenced against Walmart for its sale of Welspun products—with the SDNY Action "for purposes of discovery and other pretrial scheduling, if not ultimately consolidated into the same action, since it **raises the same core allegations**." (*Id*. at 3)[5] Plaintiffs' consolidated amended complaint in the consolidated action is due next week, February 27, 2017. (Ex. 6, *Welspun* Lead Counsel Order at 4.)

On December 9, 2016, Hagens applied to be appointed lead plaintiffs' counsel in the SDNY Action, and Paynter applied to be a member of the Plaintiffs' Executive Committee. (Ex. 4, Hagens Lead Counsel Appl.) Shortly thereafter, and before the SDNY's decision on interim lead counsel, Hagens and Berman retrofitted their *Monahan* complaint to swap out Walmart for BB&B and commenced this suit. This choice of venue had nothing to do with Plaintiffs' allegations or convenience, as the named Plaintiffs are out-of-state residents who allegedly purchased their Welspun products in Arizona and North Carolina. Nor did it have anything to do with BB&B's convenience, as BB&B is a New York corporation with its principal place of business in New Jersey. The choice of venue was also inconsistent with the previous agreement by Hagens and Paynter to coordinate another similar retailer action with the SDNY Action in the SDNY because "these actions are premised on substantively analogous facts and law." (*See* Ex. 3, *Welspun* Status Report at 3–4.)

The only apparent explanation for choosing this venue, in fact, is the same reason that Hagens and Paynter filed their retailer suit *Monahan*: they wanted to retain a lead counsel role in retailer suits if their application for interim counsel appointment did not succeed in the SDNY Action. That was prescient, as Judge Sullivan denied their motion, stating his concern that their

---

[5] Unless otherwise indicated, emphasis is added and internal quotations, alterations, and citations are omitted.

4

"convoluted" proposed multi-firm structure would lead to "duplicated efforts" and "wasted resources." (*See* Ex. 6, *Welspun* Lead Counsel Order at 3.)

Hagens' and Paynter's failure to make their case as interim lead counsel in the SDNY does not justify maintaining a separate action in this District that is subsumed by the SDNY Action in the hope of being appointed interim lead counsel here. Just the opposite: like Judge Sullivan found, this case would be more efficiently run if coordinated with the SDNY Action and *Monahan* action in the SDNY.

## ARGUMENT

I.  **THIS CASE SHOULD BE DISMISSED BECAUSE THE COURT CANNOT EXERCISE PERSONAL JURISDICTION OVER THE DEFENDANT.**

This action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) because Plaintiffs cannot establish personal jurisdiction over Defendant BB&B. *See, e.g.*, *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009). "It goes without saying that, where the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present." *Id.* at 1217. Plaintiffs cannot show that this Court can exercise either general or specific personal jurisdiction over BB&B. *Id.* at 1220 n.2.

There is no general personal jurisdiction over BB&B. A corporation is subject to general personal jurisdiction only where it is "at home," which is either in its place of incorporation or principal place of business. *See, e.g., Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). As the complaint confirms, BB&B fits neither criteria: it is a New York corporation with its principal place of business in New Jersey. (*Blair* Compl. ¶ 7.)

Plaintiffs cannot establish general jurisdiction by alleging that BB&B has "operat[ed] numerous retail stores in the State of Florida . . . that have sold Welspun's products." (*Blair* Compl. ¶ 10.) Court after court from the Supreme Court down has found such allegations insufficient. *See Daimler*, 134 S. Ct. at 761 (rejecting "the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business'" as "unacceptably grasping"); *Gray v. Apple Inc.*, No. 13-cv-7798 (KM), 2016 WL 4149977, at *4 (D.N.J. Aug. 3, 2016) (finding general personal jurisdiction over Apple improper despite 12 retail stores and $182.2 billion in sales to in-state customers because "these business contacts, although obviously substantial, continuous, and systematic, do not displace the paradigm, default rule of *Daimler*"); *Flynn v. Hovensa*, LLC, No. CIV.A. 3:14-43, 2014 WL

5

3375238, at *4 (W.D. Pa. July 3, 2014) ("The ownership of retail stores is not enough to meet the general jurisdiction standard set forth in *Daimler*."). Thus, this Court lacks general personal jurisdiction over BB&B.

Nor have Plaintiffs demonstrated specific personal jurisdiction over BB&B. Specific jurisdiction is proper only when "the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (requiring "the plaintiff's claims [to] 'arise out of or relate to' at least one of the defendant's contacts with the forum."); *see also Oldfield*, 558 F.3d at 1222–23 (finding in the case of torts like the ones Plaintiffs allege here, "[t]he contact must be a 'but-for' cause"); *Matthews v. Brookstone Stores, Inc.*, 469 F. Supp. 2d 1056, 1060–61, 1066 (S.D. Ala. 2007) (a breach of warranty claim in connection with out-of-forum sale to out-of-forum defendant without any allegation that plaintiff was wronged by defendant in the forum could not support exercise of specific jurisdiction). Plaintiffs allege no connection between their claims and Florida, let alone that any events that occurred in the state caused their claims or that any wrong occurred here. Moreover, because there is no nexus between Plaintiffs' allegations and this District, exercising personal jurisdiction over BB&B would not comport with the requirements of constitutional due process. *See Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (For the exercise of specific jurisdiction to be "consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."); *see also Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 319–20 (1945) ("our traditional conception of fair play and substantial justice . . . permit[s] the state to enforce the obligations which [the foreign party] **has incurred there**").

As a result, the Court lacks personal jurisdiction over BB&B, and Plaintiffs' complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2). *See Brownsberger v. Gexa Energy, LP*, No. 10-81021-cv-Hurley, 2011 WL 197464, at *6 (S.D. Fla. Jan. 20, 2011) (dismissing claims against defendants for lack of personal jurisdiction and improper venue under § 1406(a)), *aff'd sub nom. Brownsberger v. Nextera Energy, Inc.*, 436 F. App'x 953 (11th Cir. 2011).

II.   **THIS CASE SHOULD BE DISMISSED BECAUSE VENUE IS NOT PROPER.**

Plaintiffs may not proceed in the Southern District of Florida for the independent reason that this is not a proper venue. Under 28 U.S.C. § 1406(a), if a case is filed in an improper

6

venue, it must be either dismissed or transferred "in the interest of justice" to a district "in which it could have been brought." Under the circumstances here, venue would be proper in a district only where (1) "a substantial part of the events or omissions giving rise to the claim occurred" or (2) BB&B resides. *See* 28 U.S.C. § 1391(b).[6] As the Eleventh Circuit has made clear, when considering whether a substantial part of the events or omissions occurred in a district, "[o]nly the events that directly give rise to a claim are relevant." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003).

Plaintiffs do not allege that any aspect of the events or omissions giving rise to their claims occurred in this District, let alone a substantial part of such events or omissions. Plaintiffs themselves have no connection to this venue: both live out-of-state and neither of them allegedly purchased any of the products giving rise to their claims within Florida. Instead, Plaintiffs allege only that "part of the affected interstate trade and commerce [described in their complaint] was carried out in this District." (*Blair* Compl. ¶ 9.) This general, vague allegation cannot satisfy Plaintiffs' burden of establishing proper venue. *See Jenkins*, 321 F.3d at 1371 (emphasizing that venue is only proper in "those locations hosting a 'substantial part' of the events" giving rise to a claim).

Nor can Plaintiffs avoid this pleading defect by alleging that other, unnamed putative class members may have purchased allegedly mislabeled products in this District. In a putative class action, venue is based solely on the individual allegations of the named plaintiffs; allegations pertaining to the class as a whole are irrelevant. *See, e.g.*, *Joseph v. Liberty Nat. Life Ins. Co.*, No. 08-20117-cv-Martinez, 2008 WL 2026006, at *1 (S.D. Fla. May 9, 2008) ("in considering venue, the inquiry must be focused only on the named Plaintiffs and not the potential class members"); *United States ex rel. Sero v. Preiser*, 506 F.2d 1115, 1129 (2d Cir. 1974) ("[a]lthough the same statutory provisions determine venue for Rule 23 as for nonclass actions, 28 U.S.C. 1391(a) . . . may be satisfied if only the named parties to a class action meet its requirements"); *AL & PO Corp. v. Am. Healthcare Capital, Inc.*, No. 14 C 1905, 2015 WL 738694, at *3 (N.D. Ill. Feb. 19, 2015) ("[T]hough Plaintiff has proposed nationwide classes, the class certification motion has not been briefed, and the court does not assume such a broad class

---

[6] Because the SDNY meets the requirements of § 1391(b)(2), this Court need not consider 28 U.S.C. § 1391(b)(3), which applies when no venue meets the requirements of either paragraph (1) or (2).

7

will in fact ultimately be certified."). Any rule otherwise would render section 1391 toothless, as "a plaintiff could establish venue in just about any federal district by designating the case a nationwide class action." *Henrichs v. Nova Biomed. Corp.*, No. 6:14-CV-2, 2014 WL 2611825, at *2 (S.D. Tex. June 11, 2014).

Plaintiffs similarly cannot lay venue in this District based on BB&B's residence. For the purpose of venue, a corporation is "deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). And as explained above, BB&B is not subject to personal jurisdiction here; therefore, BB&B does not reside in this District, and venue is improper. *See Brownsberger*, 2011 WL 197464, at *6 (dismissing claims against defendants for lack of personal jurisdiction and improper venue under § 1406(a)).

### III. THE CASE SHOULD BE TRANSFERRED TO THE SDNY.

Even if personal jurisdiction could be established over BB&B—and it cannot—and this District were deemed a proper venue for Plaintiffs' claims—and it is not—the most appropriate venue for this suit remains the SDNY, where all other actions involving Welspun's Egyptian cotton products are consolidated and already pending. The Court should accordingly transfer this suit to the SDNY.

Courts may transfer a federal action under either 28 U.S.C. § 1406(a), which applies when a plaintiff's choice of venue is improper, or § 1404(a), which applies when the plaintiff's choice of venue may be proper but another venue is more appropriate. In either case, the Court may transfer where (1) the case could have been brought in the proposed transferee venue, and (2) transfer serves the convenience of the parties and witnesses and is in the interest of justice. *M Tobacos, Inc. v. Case*, No. 14-81481-cv-Middlebrooks, 2015 WL 11438107, at *3–4 (S.D. Fla. Apr. 17, 2015) (transfer under § 1406(a)); *Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013) (transfer under § 1404(a)). This case easily meets both elements.

#### A.   This Action Could Have Been Brought in the SDNY.

In order to establish that a case could have been brought in a proposed transferee venue, a transfer movant must show that (1) subject-matter jurisdiction exists in the transferee venue, (2) venue is proper in the transferee court, and (3) the movant is subject to service of process in the transferee court. *Carucel Investments, L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1223 (S.D. Fla. 2016) (citing *Osgood*, 981 F. Supp. 2d at 1263).

The SDNY meets all three requirements for Plaintiffs to bring their case there.  First, the SDNY has subject-matter jurisdiction over Plaintiffs' claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because there is minimal diversity and Plaintiffs allege that the amount in controversy exceeds $5 million.  (See Blair Compl. ¶ 8.)  Second, as discussed above, venue is proper in the SDNY because BB&B is incorporated in New York County.  (See Ex. 14 (N.Y. Department of State's incorporation listing for BB&B); supra § II.)  Finally, BB&B is amenable to process in the SDNY because it was incorporated in New York and, therefore, is subject to the general personal jurisdiction of the SDNY.  See Daimler, 134 S. Ct. at 760.

### B. Transfer to the SDNY Would Serve the Interests of Justice and the Convenience of Parties and Witnesses.

In "assess[ing] whether convenience and the interest of justice require transfer to the requested forum . . . the Court applies several factors weighing various public and private interests."  Carucel, 157 F. Supp. 3d at 1223 (quoting Windmere Corp. v. Remington Prods., Inc., 617 F. Supp. 8, 10 (S.D. Fla. 1985)).  The factors include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Id. at 1224; see also Zenith Elecs. LLC v. Craig Elecs. Inc., No. 13-80567-cv-Middlebrooks, 2014 WL 12452452, at *2 (S.D. Fla. Feb. 4, 2014).  These factors overwhelmingly favor transfer to the SDNY.

First, the convenience of witnesses—which "[is] among the most important factors to consider in the analysis," see Advanced Ground Info. Sys., Inc. v. Life360, Inc., No. 14-80651-cv-Middlebrooks, 2014 WL 12469974, at *3 (S.D. Fla. Sept. 16, 2014)—clearly favors transfer to the SDNY.  The underlying claims in the prior pending SDNY Action and in this case are substantially similar, and the named Plaintiffs here are members of the putative class in the earlier-filed SDNY Action.  Accordingly, the witnesses to all of these actions will be the same and the transfer of this case to the SDNY will promote the convenience of those witnesses by ensuring that they are not subjected to duplicative or conflicting discovery requests and demands in multiple fora.

9

Moreover, the SDNY is a far more convenient location for BB&B and its witnesses, given that its headquarters are just outside New York City. And of any U.S. location, the SDNY would be most convenient for Welspun's witnesses, who are the non-party witnesses most likely to be subjected to discovery in this action, given that the SDNY Action is pending there and it is the site of WUSA's headquarters. In contrast, none of the parties reside in the Southern District of Florida.

Second, the location of evidence favors transfer to the SDNY. No evidence relating to Plaintiffs' individual claims exists in this District. In contrast, to the extent that they become relevant, BB&B's corporate records are likely to be found at its headquarters in Union, New Jersey—just 20 miles from the SDNY. Similarly, WUSA's corporate records will most likely be found at its headquarters in New York City.

Third, as noted above, the convenience of the parties, like the convenience of the witnesses, "[is] among the most important factors to consider in the analysis," *Advanced Ground*, 2014 WL 12469974, at *3, and here strongly favors the SDNY given its proximity to BB&B's principal place of business and the lack of substantial connection any party has to this District.

Fourth, the locus of operative facts also favors transfer. None of the operative facts occurred in this District. WIL manufactured its bed linen products outside of the United States. In addition, BB&B made its purchases through WIL's New York-based subsidiary, WUSA. In contrast, the named Plaintiffs purchased their products outside of Florida.

Fifth, compulsory process to secure the attendance of non-party witnesses is more likely available in the SDNY than in the Southern District of Florida. Welspun's employees are the non-party witnesses most likely to be subpoenaed in this action, making the SDNY, where WUSA is headquartered, the most likely forum for issuing subpoenas. In contrast, BB&B is unaware of any witnesses who would fall within the subpoena power of this Court. Fed. R. Civ. P. 45(c)(1)(A), (B)(ii) (A subpoena may only command a non-party witness to attend a hearing or trial with "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or, for a trial, "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . would not incur substantial expense."). This factor therefore clearly favors transfer. *See U.S. Commodities Futures Trading Comm'n v. Hunterwise Commodities, LLC*, No. 12-81311-cv-Middlebrooks, 2013 WL 12082737, at *3 (S.D.

Fla. Feb. 12, 2013) (unavailability of compulsory process in transferee district militated against transfer).

Sixth, the relative means of the parties is of little consideration here. Plaintiffs have brought a putative nationwide class action suit and have retained counsel who, by their own account, "regularly litigate[] complex class actions throughout the country and in [the SDNY]" (Ex. 4, Hagens Lead Counsel Appl. at 6), "[have] deposed dozens of individuals outside the country," and "[have] attorneys based and/or licensed in New York, where Welspun USA is headquartered, and attorneys licensed in dozens of other states, including the headquarters of . . . Bed Bath and [B]eyond" (Carey Decl. ¶¶ 10–11, *In re Welspun Litig.*, No. 16 Civ. 6792 (RJS), Dkt. No. 45 (S.D.N.Y. Dec. 22, 2016), attached at Ex. 15).

Seventh, Plaintiffs raise claims under federal and New Jersey law, not Florida law. While this Court and the SDNY are both undoubtedly capable of applying such law, the SDNY is more likely to be familiar with New Jersey law given the proximity of New Jersey to that venue.

Eighth, Plaintiffs' choice of forum should be given no weight because in cases like here, "where forum-shopping is evident, . . . courts should disregard plaintiff's choice of forum." *Foster v. Nationwide Mut. Ins. Co.*, No. C 07-04928 SI, 2007 WL 4410408, at *2 (N.D. Cal. Dec. 14, 2007); *see also Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 5 (D.D.C. 2006) ("To the extent that plaintiffs are engaging in forum shopping, it weighs in favor of transfer to the more appropriate forum.").

But even putting Plaintiffs' counsel's gamesmanship aside, Plaintiffs' choice of forum should be given very little weight because "the operative facts underlying [Plaintiffs'] cause of action did not occur within the plaintiff's chosen forum." *See Credit Card Fraud Control Corp. v. Cybersource Corp.*, No. 12-81141-cv-Middlebrooks, 2013 WL 12094633, at *2 (S.D. Fla. Jan. 31, 2013) (citing *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011)) (granting transfer). In addition, this District is not Plaintiffs' home forum. *See Rothschild Digital Media Innovations, LLC v. Sony Comput. Entm't Am. LLC*, No. 14-22134-cv-Middlebrooks, 2014 WL 12029271, at *3 (S.D. Fla. Aug. 28, 2014) ("[W]here a plaintiff has chosen a forum that is not its home forum, only minimal deference is required, and it is considerably easier to satisfy the burden of showing that other considerations make transfer proper." (quoting *Cellulaw Tech. & Telecomm., L.P. v. Alltell Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007))) (granting transfer). And this factor recedes even further into the background

here because Plaintiffs seek to represent a nationwide class. *Koster v. Lumbermens Mutual Cas. Co.*, 330 U.S. 518, 524 (1947); *In re Warrick*, 70 F.3d 736, 741 n.7 (2d Cir. 1995) ("[T]he plaintiffs' choice of forum is a less significant consideration in a (here, putative) class action than in an individual action."); *Ingram v. Family Dollar Stores of Ala., Inc.*, No. CV-06-BE-1507-S, 2006 WL 7132701, at *2 (N.D. Ala. Sept. 29, 2006) ("When the potential class involves hundreds or thousands of people from around the country, the plaintiff's chosen forum loses much of its weight.").

Finally, there can be no doubt that trial efficiency and the interests of justice strongly favor transfer to the SDNY, and those circumstances alone warrant transfer. *See Carucel*, 157 F. Supp. 3d at 1229 ("[A] number of federal courts have considered this factor [the interests of justice] decisive—outweighing the other statutory factors."); *Blue Gentian, LLC v. Tristar Prod., Inc.*, No. 12-81170-cv-Seitz, 2013 WL 12097761, at *4 (S.D. Fla. Mar. 19, 2013) (same).

This case is clearly related to the SDNY Action and the *Monahan* action currently pending before Judge Sullivan in the SDNY, as Welspun Egyptian cotton sheets are at the center of all three actions and all plaintiffs raise the same type of claims and issues. Indeed, the SDNY Action involves all bed linen products that Welspun labeled "100% Egyptian Cotton," regardless of retailer, and the named Plaintiffs' claims are encompassed in the SDNY Action's putative class. Having one court manage and adjudicate all pending actions would best serve judicial economy and, just as important, minimize the risk of inconsistent judgments. *See Ferens v. John Deere Co.*, 494 U.S. 516, 532 (1990) ("We have made quite clear that [t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960))).

In contrast, and as Judge Sullivan recognized when denying Hagens' motion to become interim lead counsel, having multiple law firms prosecuting the same cases would lead to "duplicated efforts" and "wasted resources."  (*See* Ex. 6, *Welspun* Lead Counsel Order at 3.) This is why Plaintiffs' counsel agreed to consolidate all actions pending against Welspun into one action and coordinate that action with *Monahan* in the SDNY in the first place. It is also presumably why Plaintiffs' counsel here, Hagens and Paynter, filed the substantially similar *Monahan* action in the SDNY, even though the named plaintiff in that case is a Michigan resident who made her purchase in Rochester Hills, Michigan.  (*See* Ex. 2, *Monahan* Compl.; *see also*

12

Related Case Statement at 2, *Monahan*, No. 16 Civ. 8662 (RJS), Dkt. No. 3 (Nov. 8, 2016), attached as Ex. 16 ("Both actions share factual questions arising from allegations of false marketing and advertising of sheets manufactured by Welspun.").)  At a minimum, if transferred to the SDNY, this case—like the *Monahan* action—could be coordinated with those actions, if not consolidated.  *See Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1196–97 (11th Cir. 1991) (transfer was appropriate when it would allow consolidation of action with related action pending in transferee court).

IV.     **IF THIS ACTION IS NOT TRANSFERRED, IT SHOULD BE STAYED.**

At the very least, this case should be stayed pending resolution of the SDNY Action.  The District Court has "broad discretion to stay proceedings as an incident to its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  "Stays of proceedings can also promote judicial economy, reduce confusion and prejudice, and prevent possibly inconsistent resolutions."  *Lopez v. Miami-Dade Cnty.*, 145 F. Supp. 3d 1206, 1208 (S.D. Fla. 2015) (citing *Clinton,* 520 U.S. at 706, and *Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.,* 743 F.2d 1519, 1525 (11th Cir. 1984)).  Here, a stay will promote judicial economy.  As noted above, there is significant overlap between the issues in the SDNY Action, the *Monahan* action, and this one.  To avoid needless expenditure of judicial effort and the parties' resources, the overlapping issues should be decided just once, and they should be decided by Judge Sullivan in the first-filed and much larger SDNY Action.

A stay also will prevent confusion among potential class members.  The putative class in this action—purchasers of bed linens from BB&B manufactured by Welspun and labeled "100% Egyptian Cotton"—is a subset of the putative class in the SDNY Action—purchasers of all bed linens manufactured by Welspun and labeled "100% Egyptian Cotton" (regardless of retailer).  Should classes be certified, receiving class notifications from two different courts in two different cases will invite confusion among class members unless carefully coordinated.  To allow for such coordination, this action should be stayed pending class determination in the SDNY Action.

Finally, a stay will prevent inconsistent resolutions of overlapping issues.  For example, plaintiffs in the SDNY Action, the *Monahan* action, and here raise the same threshold issues regarding decision to label Welspun sheets "100% Egyptian Cotton" and representations Welspun made to retailers.  Inconsistent resolutions of these issues could introduce conflicting

13

law in any other future cases. Staying this action so Judge Sullivan could decide the issue in the first instance would avoid this potential harm.

## CONCLUSION

For the foregoing reasons, Defendant BB&B respectfully requests that this action be dismissed, transferred to the SDNY, or stayed pending resolution of the common issues in the SDNY Action.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

On February 21, 2017, counsel for movant spoke with Plaintiffs' counsel in a good faith effort to resolve the issues raised in the instant motion and was unable to do so. Counsel for movant also spoke with counsel for WUSA, a non-party that may be affected by the relief sought in the instant motion, and WUSA consents to the relief requested in this motion.

Dated: February 21, 2017

    Respectfully submitted:

    HOMER BONNER JACOBS

    1200 Four Seasons Tower
    1441 Brickell Avenue
    Miami Florida 33131
    Phone: (305) 350-5136
    Fax: (305) 982-0070

    By:   /s/ Yaniv Adar
        Peter W. Homer
        Email: phomer@homerbonner.com
        Florida Bar No: 291250
        Yaniv Adar
        E-mail: yadar@homerbonner.com
        Florida Bar No: 63804

Attorneys for Defendant Bed Bath & Beyond, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by operation of this Court's electronic case filing system on February 21, 2017 on all counsel or parties of record on the Service List below.

/s/ Yaniv Adar
Yaniv Adar

## SERVICE LIST

Edward H. Zebersky
ezebersky@zpllp.com
Todd S. Payne
tpayne@zpllp.com
ZEBERSKY PAYNE, LLP
110 S.E. 6th Street, Suite 2150
Fort Lauderdale, FL 33301
Telephone: (954) 989-6333
Facsimile: (954) 989-7781

Stuart M. Paynter
THE PAYNTER LAW FIRM PLLC
1200 G. Street NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 626-4486
Facsimile: (866) 734-0622
stuart@paynterlawfirm.com

*Attorneys for Plaintiffs
Donald Blair and Debbie Holland*

Robert B. Carey
Leonard W. Aragon
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rob@hbsslaw.com
leonard@hbsslaw.com